# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAMIR STEVE,<br>      Plaintiff | )<br>)<br>) | C.A. No. 15-252 Erie |
| v | )<br>)<br>) | Magistrate Judge Baxter |
| NANCY GIROUX, et al.,<br>      Defendants | )<br>) | |

## MEMORANDUM OPINION[1]

United States Magistrate Judge Susan Paradise Baxter

### I.    INTRODUCTION

#### A.    Relevant Procedural History

On October 15, 2015, Plaintiff Ramir Steve, an inmate incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), initiated this civil rights action by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983 against Defendants Nancy Giroux, Superintendent at SCI-Albion ("Giroux"), and Sgt. Delaney, a corrections officer at SCI-Albion ("Delaney"). Plaintiff subsequently filed a motion to dismiss Defendant Delaney from this case voluntarily [ECF No. 28], which was granted by this Court by Order dated January 19, 2017 [ECF No. 32]. Thus, Defendant Giroux is the sole Defendant in this case.

Plaintiff claims that his Eighth Amendment rights were violated when "the water to the jail was cut off" from March 9, 2015 through March 15, 2015, which allegedly forced him to

---

[1] All parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 11, 16].

"defecate and urinate in plastic bags" and to eat snow because there was no running water in the toilets, sinks, or showers. (ECF No. 4, Complaint, at Section IV). As relief for his claim, Plaintiff seeks monetary damages.

Defendant Giroux filed an answer to Plaintiff's complaint on May 2, 2016, and the parties have since completed discovery. Defendant Giroux has now filed a motion for summary judgment [ECF No. 66], arguing that Plaintiff failed to exhaust his administrative remedies and, alternatively, has failed to state an Eighth Amendment claim upon which relief may be granted. Although Plaintiff was given ample time to respond to Defendant's motion, he has failed to do so. This matter is now ripe for consideration.

### **B.** **Standards of Review**

#### **1.** **Summary Judgment**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (19896). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue

4

of material fact." Celotex, 477 U.S. at 323 quoting Fed.R.Civ.P. 56.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex, 477 U.S. at 330. See also Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). When a non-moving party would have the burden of proof at trial, the moving party has no burden to negate the opponent's claim. Celotex, 477 U.S. at 323. The moving party need not produce any evidence showing the absence of a genuine issue of material fact. Id. at 325. "Instead, … the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. After the moving party has satisfied this low burden, the nonmoving party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. Id. at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Id. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001); Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.").

In considering these evidentiary materials, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007) (internal quotation marks and alterations omitted). See also Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001) (when applying this standard, the court must examine the factual record and make reasonable inferences

4

therefrom in the light most favorable to the party opposing summary judgment).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson., 477 U.S. at 248, 255 ("only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 249. The court may consider any evidence that would be admissible at trial in deciding the merits of a motion for summary judgment. Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993).

### **2.** *Pro Se* **Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (Apetition prepared by a prisoner... may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th

Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997) (overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990) (same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### C. Exhaustion

Defendant argues that Plaintiff has failed to exhaust his administrative remedies in accordance with the requirements of the Prison Litigation Reform Act. The Court agrees.

#### 1. The Exhaustion Requirement

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), provides, in pertinent part:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.[2]

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Concepcion v. Morton, 306 F.3d 1347

---

[2] It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 216 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

(3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[3] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[4]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier

---

[3] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[4] There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-- monetary damages--cannot be granted by the administrative process.").

discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

### 2. The Administrative Process Available to State Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218.

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

### 3. **Analysis**

In support of their exhaustion argument, Defendants have submitted the Declaration of Michele Tharp, Superintendent's Assistant and Grievance Coordinator at SCI-Albion ("Tharp"), who declares, in pertinent part:

> 6. Mr. Steve filed Grievance #591453 on October 8, 2015 at SCI-Albion….
>
> 7. While the typed date on Grievance #591453 has a date of March 18, 2015, the grievance was only received by the Facilities Grievance Coordinator on October 8, 2015….[5]
>
> 8. On October 9, 2015, a response was issued to Grievance #591453 in the form of a Grievance Rejection as the grievance was not submitted within fifteen working days of the events upon which the claims were based….
>
> 9. The Grievance Rejection noted that the grievance was extremely untimely as over 6 months had passed before the inmate inquired as to why he did not receive an answer to the grievance….
>
> 10. The Grievance Rejection further noted that when the inmate did not receive his pink copy from his original grievance showing it was processed, he should have contacted the Grievance Coordinator within 15 days of filing the grievance per the DC-ADM 804 policy….
>
> 11. Inmate Steve filed an Appeal to the Facilities Manager from the rejection of Grievance #591453….[6]

---

[5] Attached to Ms. Tharp's declaration are copies of all grievance records pertaining to Grievance No. 591453, which confirm that Plaintiff was raising the same issues that are raised in this case. (See ECF No. 36-2, at pp. 2-7). As Ms. Tharp states, the grievance is purportedly dated "3/18/15;" however, the Court notes that the number of the month appears to be handwritten over the typed number on the copy attached to Ms. Tharp's declaration (See Id. at p. 2). Thus, it is not entirely clear when the original grievance was written or submitted.

[6] Although Ms. Tharp declares that the appeal was from the rejection of Plaintiff's grievance, the appeal document does not reference the rejection of the grievance, nor does it contain the number of the grievance to which the appeal applied. Instead, in the box for "grievance #", Plaintiff wrote "none." (See ECF No. 36-2, at p. 5).

12. The Appeal to the Facilities Manager was received on October 9, 2015 for Grievance #591453….

13. The date on Appeal to the Appeal to Facility Manager [sic] is dated September 18, 2015, which is 21 days before the rejection was issued.

14. Even if Mr. Steve had submitted the Appeal to the Facility Manager on September 18, 2015, that was more than 6 months after the date of the events upon which the claims were based and would still be untimely under DC-ADM 804.

15. On October 14, 2015, the Facility Manager's Appeal Response was issued dismissing Grievance #591453 as untimely finding that it was properly rejected under DC-ADM 804.

16. Grievance #591453 was not appealed to final review.

(ECF No. 36-1, Declaration of Michele Tharp, at ¶¶ 6-16).

Plaintiff has not submitted any evidence to contradict Ms. Tharp's declaration. Thus, based on the uncontroverted evidence of record, it is apparent that Plaintiff failed to exhaust his administrative remedies in accordance with the PLRA's requirements, and is now procedurally defaulted from doing so. As a result, Plaintiff's claim against Defendant Giroux will be dismissed.

An appropriate Order follows.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: May 19, 2017